Filed 3/17/14  Sinany v. Kheroyan CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MANOOSH SINANY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SHUSHANIK KHEROYAN,<br><br>Defendant and Appellant. | B243092<br><br>(Los Angeles County<br>Super. Ct. No. ES01559) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura A. Matz, Judge.  Reversed.

Sheppard, Mullin, Richter & Hampton, Moe Keshavarzi and David Dworsky for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Appellant Shushank Kheroyan (Kheroyan) appeals after a civil harassment restraining order was issued against her pursuant to an application brought by her neighbor, respondent Manoosh Sinany (Sinany). The order, issued after a hearing on June 8, 2012, requires Kheroyan to stay at least 10 yards away from Sinany and her family for a period of three years. We reverse.

*FACTUAL & PROCEDURAL BACKGROUND*

Respondent Sinany[1] rents a house on the front portion of a property in Glendale. Appellant Kheroyan rents the back house from the same landlord. There is a driveway or street which goes past Sinany's house to Kheroyan's house.

There has been a long-standing dispute between the parties over the use of the driveway. Sinany contends the landlord told her she could park two cars in the driveway. Kheroyan claims that this blocks access to her house, and more importantly access by her mother. Apparently Kheroyan has parked her mother's van in the same driveway which Sinany thought was hers to use. Kheroyan claims she has an agreement with the landlord which allows her to walk up the driveway for access to her house.

In addition, there is a dispute over the city-issued trash cans. Sinany accused Kheroyan of stealing the trash cans and accordingly, Sinany appropriated the trash cans by writing her name on them. Kheroyan claims she must be able to use the trash cans.

Sinany lives with her husband, a daughter, and twin 14-year-old sons. One of the teen sons is disabled. Sinany claims Kheroyan yells at the disabled son and calls him names. This causes him to worry about dying and he cannot sleep. There are also a number of other accusations Sinany makes against Kheroyan.

Kheroyan accused Sinany of scratching her car and of coming to her house late at night to yell at her.

---

[1] Sinany spelled her name as "Cinani" for the trial court reporter.

Sinany applied for a restraining order on May 22, 2012 (Los Angeles Superior Court case No. ES015559, this appeal).

Kheroyan also applied for a restraining order against Sinany. The matter was assigned to a different courtroom. At a hearing held on June 8, 2012, on Sinany's application, the file for Kheroyan's application was retrieved and heard together with Sinany's matter. Kheroyan's application is not part of the record in this appeal.

Sinany and her daughter, Renia Davoodi, testified. Sinany testified that Kheroyan stole their trash can and called child protective services. According to Sinany, Kheroyan even admitted calling the child abuse center; other neighbors heard Kheroyan say, "I will get her kids taken away if it's the last thing I do." As a result, police officers and a social worker came by Sinany's home to check. Sinany testified that at a prior court hearing, Kheroyan's mother said, "These people need to be hung."

Mrs. Davoodi testified that management for the property told them they could park two cars in the driveway. Davoodi also testified Sinany's sons cannot sleep and are deeply affected and very frightened because Kheroyan yells about the boy's disability and stuttering. Sinany's sons have asked, "Why does [Kheroyan] say these things?" They are both 14 years old, and one of them has had surgery four separate times.

Sinany testified about an incident where Kheroyan appeared to be recording them with a camera through a window. She also accused Kheroyan of burning documents in the backyard and claimed the fire threatened their apartment.

Kheroyan denied all of Sinany's and Davoodi's accusations. She claimed to have a stipulation from the landlord which allows her to walk through the driveway to get to her apartment.[2] She accused them of scratching her car but did not see who actually did it. She claimed Sinany did not let her walk through the common area to get to her

---

[2]  The stipulation was apparently reached after the manager filed an unlawful detainer action against Kheroyan. The stipulation apparently was attached to Kheroyan's response to Sinany's request for restraining order.

3

apartment and that she was not able to use the trash can for more than five months. She said Sinany came to her house late at night, knocking on the door, "breaking in screaming, yelling. . . . not letting me park the car in the parking space and not letting me walk through the property to my apartment." Kheroyan later revised her claim by stating her door was open and Sinany started to yell at her, so she closed the door.

As for yelling at Sinany's son, Kheroyan claimed she never met him and had never seen him.[3]

After hearing testimony from Sinany and Kheroyan, the trial court accepted Sinany's description of Kheroyan's harassment. The trial court determined there was clear and convincing evidence of harassment and granted the civil harassment restraining order against Kheroyan. The trial court specifically noted:

> "I'm more concerned about their request; and that is that they accuse you of saying terrible things constantly to harass them to the point their disabled son is afraid of you and cannot sleep. That is very disturbing to me that you're out there yelling at them all the time. [¶] What do you have to say about that?"

When Kheroyan denied Sinany's claim and added that Sinany also accused her of damaging property, the trial court replied:

> "I did not ask you about damaging anything because they don't know who damaged the thing. They think it's you, but they can't prove it's you. I'm not interested in that *because it has to be proved by clear and convincing evidence to me*, and they don't have clear and convincing evidence that you damaged anything. I am concerned that you verbally harass them all the time. [. . .] I will issue a restraining order against you that you are not to harass them[.]" (Emphasis added.)

---

3    In her response to the restraining order, she stated, "I never did so, or would never do!! What ever questions her son asked her they should deal with it inside of the family."

The trial court denied Kheroyan's request for a restraining order against Sinany, stating: "I don't give restraining orders to enforce a lease. I don't give restraining orders over parking spaces so your request is denied."

Kheroyan appealed the order granting Sinany's application. Sinany did not file a respondent's brief.

*CONTENTIONS ON APPEAL*

Kheroyan contends that there was no clear and convincing evidence supporting the restraining order against her. She argues that mere disputes do not amount to harassment, free speech cannot be restrained under Code of Civil Procedure section 527.6,[4] and there was no evidence of violence or a credible threat of violence. Next she argues there was no course of conduct because the allegations of yelling involved a single incident. Then she contends there was insufficient evidence of substantial emotional distress. Finally she contends that her conduct served a legitimate purpose because she needed to walk past Sinany's home in order to access her own home.

*DISCUSSION*

The version of section 527.6 in effect at the time the restraining order was granted provides in pertinent part: "(a)(1) A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an injunction prohibiting harassment as provided in this section."

Harassment is defined in section 527.6, subdivision (b)(3) as: "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner."

---

[4]    All subsequent undesignated statutory references shall be to the Code of Civil Procedure.

Subdivision (b) of section 527.6 defines the terms "credible threat of violence" and "course of conduct." A "'credible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (§ 527.6, subd. (b)(2).)

A "'course of conduct' is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual . . . . Constitutionally protected activity is not included within the meaning of 'course of conduct.'" (§ 527.6., subd. (b)(1).)

Emotional distress has been defined as "highly unpleasant mental suffering or anguish '"from socially unacceptable conduct."'" (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) The effect on the ability to "rest, sleep, relax, read, watch television and sit in their home and to converse in their backyard" does not establish substantial emotional distress. (*Ibid.*)

The trial court must find clear and convincing evidence that unlawful harassment exists. (§ 527.6, subd.(d).)

In reviewing the trial court's decision, we must determine whether it is supported by substantial evidence. (*Duronslet v. Kamps* (2012) 203 Cal.App.4th 717, 724.) In order to determine whether substantial evidence supports the claim of harassment, "[w]e resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value. (Citations.)" (*Schlid v. Rubin, supra*, 232 Cal.App.3d at p. 762.)

Breaking down all of the parties' accusations, we have identified the acts of Kheroyan about which Sinany complains: (1) using their trash cans; (2) parking in their driveway; (3) calling Sinany's son names; (4) threatening to have the children taken away from Sinany; (5) recording the family through a window; and (6) burning trash in her

6

backyard.[5]  We examine each of them to see if there is any unlawful violence, a credible threat of violence or a course of conduct directed at a specific person.

### 1. *Parking and trash can dispute*

The disputes over the parking spaces and trash cans do not constitute behavior over which the trial court can grant injunctive relief.  The evidence reflects a disagreement over the proper scope of an easement and the proper allocation of the trash cans as granted by the landlord.  As in *Byers v. Cathcart* (1997) 57 Cal.App.4th 805, 812 the use of both of these items constitutes legitimate needs, so there is no act of harassment.

### 2. *Name calling*

Sinany claims Kheroyan yelled at her son about his disability (saying "He crippled" [sic]) to the point that her son woke up in the middle of night asking what is wrong with him and if he is going to die.  She alleged Kheroyan comments on why the son stutters, making her sons scared.

In her response, Kheroyan specifically denied all of Sinany's allegations.

Kheroyan contends on appeal that Sinany did not establish a course of conduct because she only cited one instance of harassing behavior.  In addition to alleging that Kheroyan yelled at her son on a specific day, Sinany says Kheroyan harasses them "[e]veryday" and is "constantly verbally yelling hurtful things" and "constantly circling around their house."  The accusation that Kheroyan is "constantly" yelling everyday is not specific enough to establish a course of conduct of harassing her son.  In addition, "circling" the house does not establish a course of conduct of verbal abuse towards the son.

---

[5]     Because the trial court did not grant a restraining order against Sinany, we do not address the accusations of Sinany scratching Kheroyan's car and of Sinany coming to Kheroyan's house to yell at her.  In addition, we do not address the accusation that Kheroyan's mother said "These people need to be hung," since this statement is not attributed to Kheroyan.

*3. Threatening to take children away*

Sinany stated in her application for the restraining order that Kheroyan threatened to have her children taken away from her. She then testified at the hearing that police and child protective services came to her house and Kheroyan admitted to calling them. She also testified that Kheroyan told a neighbor she would have Sinany's kids taken away. There was no testimony by that neighbor, nor any evidence of a police or social worker report.

In the response to the request for injunction, Kheroyan denied she wanted Sinany's children to be taken away.

Even if Kheroyan did call the social workers, it would not necessarily constitute harassment. There was no evidence that the call was unfounded or that more than one call was made. There was no violence, no credible threat of violence, nor any course of conduct alleged, and thus did not meet the definition of harassment in section 527.6.

*4. Recording family through window and burning trash*

Whether or not Kheroyan held up a camera to record the events in the Sinany household, there is no course of conduct shown here. In addition, there is no course of conduct established by Kheroyan burning trash in her own backyard. Those separate incidents do not appear to be linked to any other allegations of threatening to have the children taken away or of verbally abusing the son. As the court in *Schlid v. Rubin* observed, "A reasonable person must expect to suffer and submit to some inconveniences and annoyances from the reasonable use of property by neighbors, particularly in the sometimes close living of a suburban residential neighborhood." (*Schlid v. Rubin, supra,* 232 Cal.App.3d at p. 763.)

In *Ensworth v. Mullvain* (1990) 224 Cal.App.3d 1105, the plaintiff told of being followed and spied upon, or receiving repeated phone calls and threatening letters. The court found this to constitute emotional distress. In *Brekke v. Willis* (2005) 125 Cal.App.4th 1400, the defendant wrote three letters to a minor in which he threatened to kill her. The actions in this case do not rise to this level.

8

*5. Conclusion*

Since we have found no evidence of harassment as defined in section 527.6, there was not sufficient evidence to support the issuance of a restraining order. We therefore reverse.

*DISPOSITION*

The judgment is reversed and the injunction issued against Kheroyan is dissolved. Kheroyan is to bear her own costs on appeal.

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                      **SEGAL, J.** *

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.